UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MICHAEL BARNEY,

                Plaintiff,

-v.-

H.E.L.P. HOMELESS SERVICE CORPORATION,

                Defendant.

19 Civ. 5959 (KPF)

**OPINION AND ORDER**

KATHERINE POLK FAILLA, District Judge:

    Plaintiff Michael Barney brings this action against Defendant H.E.L.P. Homeless Service Corporation, alleging violations of Title VII of the Civil Rights Act of 1964, *codified as amended at* 42 U.S.C. §§ 2000e to 2000e-17; the New York State Human Rights Law, N.Y. Exec. Law §§ 290-297 (the "NYSHRL"); and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-107 to 8-131 (the "NYCHRL").  Specifically, Plaintiff, who is a gay man, alleges that: (i) he was subjected to a hostile work environment at Defendant's place of work because of his sexual orientation; (ii) he was retaliated against because of his complaints about Defendant's discriminatory practices and the hostile work environment; and (iii) he was fired because of his sexual orientation. Defendant has moved to dismiss Plaintiff's Title VII claims under Federal Rule of Civil Procedure 12(b)(6), on the ground that Plaintiff failed to file this action within the requisite 90-day window, and therefore his Title VII claims are untimely.  For the reasons set forth in this Opinion, Defendant's motion to dismiss is denied.

**BACKGROUND**[1]

A.  **Factual Background**[2]

Plaintiff identifies himself as a gay man. (Compl. ¶ 63). Plaintiff worked for Defendant as a clinical social worker from May 9, 2017, to June 22, 2017. (*Id.* at ¶ 4). He alleges that he was the only gay man in a workplace consisting mostly of female employees (*id.* at ¶ 63), and that he experienced discrimination, harassment, a hostile work environment, and retaliation due to his sexuality (*id.* at ¶¶ 2-3).

On March 22, 2018, Plaintiff filed charges of discrimination against Defendant with the U.S. Equal Employment Opportunity Commission (the "EEOC"). (Compl. ¶ 7). On March 6, 2019, Plaintiff received a Notice of Right to Sue from the EEOC. (*Id.* at ¶ 8). Between March 6, 2019, and April 5, 2019, Plaintiff attempted to secure counsel for this case. (*Id.* at ¶¶ 9-24). Plaintiff first attempted to retain his prior counsel, William J. Sipser, but Mr. Sipser declined. (*Id.* at ¶¶ 9-10). Plaintiff also spoke to a friend who practices appellate law, but that friend also declined to represent him. (*Id.* at ¶¶ 11-12).

On or about March 13, 2019, Plaintiff turned to the internet and searched for lawyers who would be able to represent him in federal court in a discrimination case. (Compl. ¶ 13). Plaintiff's search revealed thousands of

---

[1] The facts in this Opinion are drawn from Plaintiff's Amended Complaint (the "Complaint" or "Compl." (Dkt. #17)), which is the operative pleading in this action. For ease of reference, the Court refers to Defendant's opening brief as "Def. Br." (Dkt. #19); to Plaintiff's opposing brief as "Pl. Opp." (Dkt. #20); and to Defendant's reply as "Def. Reply" (Dkt. #21).

[2] Given the limited nature of Defendant's motion, the Court provides only those facts relevant to Plaintiff's purportedly untimely filing.

attorneys (*id.* at ¶ 14), and Plaintiff conducted extensive background research on about two dozen of those attorneys (*id.* at ¶ 15). Over the course of the next three weeks, Plaintiff contacted ten lawyers by phone, seeking representation, but he received only three responses. (*Id.* at ¶¶ 16-17). Two of these attorneys, Noah Messing and Alexa Harwin, informed Plaintiff at the end of March that they would not have the time to represent him. (*Id.* at ¶¶ 18-22). Plaintiff also met with G. Oliver Koppell on April 5, 2019, but Mr. Koppell also declined to represent him. (*Id.* at ¶¶ 23-24).

Plaintiff does not allege that between April 5, 2019, and May 27, 2019, he contacted or attempted to contact any other attorneys. Plaintiff explains that he had previously been diagnosed with anxiety and depression (Compl. ¶ 25); after learning that none of the three attorneys with whom he had spoken would take his case, Plaintiff began suffering anxiety attacks in connection with his continuing quest for legal representation (*id.* at ¶ 27). These anxiety attacks rendered Plaintiff significantly incapacitated and unable to function, with the exception of what was necessary to carry out his job. (*Id.* at ¶ 30). In combination with depressive episodes, these anxiety attacks created in Plaintiff an extreme aversion to addressing his need for legal representation. (*Id.* at ¶ 32). Plaintiff alleges that during this period, he experienced on a daily basis a number of symptoms, all of which made it nearly impossible for him to concentrate either on securing counsel or on filing a *pro se* complaint. (*Id.* at ¶ 33). In addition to all these problems, Plaintiff experienced great difficulty with his roommate. (*Id.* at ¶ 34). Nevertheless, Plaintiff's intention was to

3

continue to seek legal representation until close to the end of the 90-day period, and if his search proved unsuccessful, he intended to proceed *pro se*. (*Id.* at ¶ 35). In fact, Plaintiff looked at the requirements for filing *pro se* online, but their complexity caused him to delay pursuing that course of action. (*Id.* at ¶ 36).

Plaintiff's mission to bring this action was brought to a dramatic halt on May 27, 2019, when his roommate stabbed him in the abdomen with a knife. (Compl. ¶¶ 37-38). While hospitalized, Plaintiff was prescribed OxyContin — a powerful opioid — for his pain, and was also placed on a breathing machine for Acute Respiratory Distress Syndrome. (*Id.* at ¶ 39). Plaintiff was hospitalized until June 6, 2019 (*id.* at ¶ 43), but the 90-day period that ran from the receipt of the Notice of Right to Sue closed on June 4, 2019 (*id.* at ¶ 44).

Following Plaintiff's release from the hospital, he encountered further barriers to securing representation in this action. (Compl. ¶¶ 45-49). Plaintiff continued to take OxyContin following his release from the hospital. (*Id.* at ¶ 47). Plaintiff was also not permitted to enter his apartment until June 10, 2019, because it was a crime scene, and he was thus required to stay in a hotel. (*Id.* at ¶ 48). Plaintiff's phone and laptop were taken by the police as evidence, and he did not regain possession of them until June 19, 2019. (*Id.* at ¶¶ 49-50). Finally, Plaintiff was generally in ill health: he only had use of one hand for some period of time, and he was tired, moving slowly, and in pain. (*Id.* at ¶¶ 45, 48).

On June 20, 2019 — the day after Plaintiff regained possession of his phone — Plaintiff contacted the firm of Outten & Golden to inquire as to whether it might represent him. (Compl. ¶ 50). The firm declined, but it referred Plaintiff to the Law Office of Jillian T. Weiss, P.C., Plaintiff's present counsel. (*Id.*). Plaintiff contacted Ms. Weiss that same day. (*Id.* at ¶ 51). Ms. Weiss did not file Plaintiff's original complaint until June 25, 2019, due to the press of other litigation with which she was involved; the fact that Ms. Weiss had a solo practice; and the time it took to draft a proper federal complaint. (*Id.* at ¶ 52). Plaintiff's complaint was filed 21 days after the 90-day period closed. (*Id.* at ¶ 53).

**B.  Procedural Background**

Plaintiff initiated this action with the filing of his original complaint on June 25, 2019. (Dkt. #1). On July 23, 2019, Defendant filed a letter requesting a pre-motion conference (Dkt. #9), to which Plaintiff responded on July 26, 2019 (Dkt. #10). On July 29, 2019, the Court ordered that the parties appear for a pre-motion conference on September 5, 2019. (Dkt. #11). The Court later adjourned the conference to September 10, 2019. (Dkt. #14).

On September 10, 2019, the parties appeared before the Court for the scheduled pre-motion conference. (Minute Entry for September 10, 2019). At that conference, the Court granted Plaintiff leave to file an amended complaint and scheduled briefing on Defendant's motion to dismiss. (*Id.*). On October 1, 2019, Plaintiff filed the operative Complaint. (Dkt. #17). On November 1, 2019, Defendant filed its motion to dismiss, along with an accompanying

5

memorandum of law. (Dkt. #18-19). Plaintiff filed his opposing brief on December 2, 2019 (Dkt. #20), and Defendant filed its reply brief on December 16, 2019 (Dkt. #21).

## DISCUSSION

### Plaintiff's Complaint Is Subject to Equitable Tolling

**A. Applicable Law**

**1. Motions to Dismiss Under Rule 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks omitted)). A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).

6

That said, a court is not bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (internal quotation marks omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)). Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2. Dismissals Based on Title VII's 90-Day Filing Deadline

An employment discrimination suit brought under Title VII must be filed within 90 days of a plaintiff's receipt of a "right to sue" letter from the EEOC. 42 U.S.C. § 2000e-5; *Sherlock* v. *Montefiore Med. Ctr.*, 84 F.3d 522, 525 (2d Cir. 1996) ("In order to be timely, a claim under Title VII ... must be filed within [ninety] days of the claimant's receipt of a right-to-sue letter."). Title VII's time limitation is "analogous to a statute of limitations." *Briones* v. *Runyon*, 101 F.3d 287, 290 (2d Cir. 1996); *accord Hardaway* v. *Hartford Pub. Works Dep't*, 879 F.3d 486, 491 (2d Cir. 2018) (citation omitted). "This requirement should be strictly enforced and not extended 'by even one day.'" *Holmes* v. *NBC/GE*, 914 F. Supp. 1040, 1042 (S.D.N.Y. 1996) (citing *Johnson* v. *Al Tech Specialties Steel Corp.*, 731 F.2d 143, 146 (2d Cir. 1984)); *see also Tiberio* v. *Allergy*

7

*Asthma Immunology of Rochester*, 664 F.3d 35, 38 (2d Cir. 2011) (finding claim time-barred when claimant commenced suit 93 days after receipt of right to sue letter); *cf. Zerilli-Edelglass* v. *N.Y.C. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), *as amended* (July 29, 2003) (noting that filing limits are subject to equitable tolling, but affirming dismissal of complaint filed 92 days after receipt of right to sue letter).

"A plaintiff's failure to file a claim within the time limits set by Title VII ... will ordinarily preclude [him] from pursuing that claim in federal court, and can warrant dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Moore* v. *City of New York*, No. 15 Civ. 4578 (KPF), 2016 WL 3963120, at *6 (S.D.N.Y. July 21, 2016) (citation omitted). However, equitable tolling may be warranted where (i) a party "has acted with reasonable diligence during the time period [he] seeks to have tolled," and (ii) the party "has proved that the circumstances are so extraordinary that the doctrine should apply." *Zerilli-Edelglass*, 333 F.3d at 80-81 (citation omitted); *see also Pace* v. *DiGuglielmo*, 544 U.S. 408, 418 (2005) (noting that a party seeking equitable tolling must demonstrate extraordinary circumstances).

Additionally, a plaintiff "must further demonstrate that those [extraordinary] circumstances caused him to miss the original filing deadline." *Harper* v. *Ercole*, 648 F.3d 132, 137 (2d Cir. 2011). A plaintiff cannot make this showing if he, "acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Valverde* v. *Stinson*, 224 F.3d 129, 134 (2d Cir. 2000). "If the person seeking equitable tolling has not

8

exercised reasonable diligence in attempting to file after the extraordinary circumstances began, the link of causation ... is broken." *Id.* And while a district court may consider a plaintiff's decision to wait until late in the limitations period to file his case as part of its equitable tolling analysis, *see Belot* v. *Burge*, 490 F.3d 201, 207-08 (2d Cir. 2007), a plaintiff "is not ineligible for equitable tolling simply because he waited until late in the limitations period to file," *Valverde*, 224 F.3d at 136. *See generally Ko* v. *JP Morgan Chase Bank, N.A.*, 730 F. App'x 62, 64 (2d Cir. 2018) (summary order) ("When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine has 'acted with reasonable diligence during the time period she seeks to have tolled' and must prove that the circumstances are so extraordinary that the doctrine should apply." (quoting *Chapman* v. *ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 512 (2d Cir. 2002))).

The Second Circuit has permitted equitable tolling in circumstances where "a plaintiff's medical condition or mental impairment prevented [him] from proceeding in a timely fashion." *Zerilli-Edelglass*, 333 F.3d at 80-81; *see also, e.g., Brown* v. *Parkchester S. Condos.*, 287 F.3d 58, 60-61 (2d Cir. 2002) (vacating district court dismissal on timeliness grounds, finding that plaintiff had presented sufficient evidence to warrant evidentiary hearing "to determine to what extent, if any, [plaintiff's] condition did in fact inhibit his understanding or otherwise impair his ability to comply"). In determining whether to exercise its discretion to allow tolling based on a medical condition,

9

a court must look for a "particularized description of how [the plaintiff's] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights[.]" *Boos* v. *Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *cf. id.* at 184 ("As [*Canales* v. *Sullivan*, 936 F.2d 755, 759 (2d Cir. 1991),] indicates, the question of whether a person is sufficiently mentally disabled to justify tolling of a limitation period is, under the law of this Circuit, highly case-specific."). "The burden of demonstrating the appropriateness of equitable tolling, however, lies with the plaintiff." *Id.* at 185.

As a final matter, the Court acknowledges that "[w]hile equitable tolling is warranted only in 'rare and exceptional circumstances,' courts do not apply its requirements mechanistically." *Harper*, 648 F.3d at 136 (internal citations omitted). "Rather, 'the exercise of a court's equity powers must be made on a case-by-case basis,' mindful 'that specific circumstances, often hard to predict in advance, could warrant special treatment in an appropriate case.'" *Id.* (quoting *Holland* v. *Florida*, 560 U.S. 631, 649-50 (2010)).

**B.  Analysis**

Although Plaintiff's Complaint raises numerous potential grounds for equitable tolling, such as Plaintiff's difficulty securing counsel and his depression and anxiety (*see* Compl. ¶¶ 9-24, 33), the only extraordinary circumstance that Plaintiff raises in his opposing papers is the stabbing attack he suffered, and his recovery from that attack (Pl. Opp. 2).  Therefore, the Court will consider only whether this incident entitles Plaintiff to equitable tolling.  *See Jackson* v. *Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[I]n the

case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned.").

The Court finds that Plaintiff has met his burden of showing that he is entitled to equitable tolling from May 27, 2019 — the date of the stabbing — until June 19, 2019, the date Plaintiff's laptop and phone were returned to him. There can be no question that suffering a stabbing attack that resulted in ten days' hospitalization is a "rare and exceptional circumstance" that warrants equitable tolling. *See Harper*, 648 F.3d at 135-37 (affirming that petitioner's assault and subsequent hospitalization, which included being confined to bed and being heavily medicated, constituted extraordinary circumstances).

Moreover, Plaintiff has provided a "particularized description" of how the stabbing, hospitalization, and subsequent recovery affected his ability to pursue his rights. *See Boos*, 201 F.3d at 185. Plaintiff has explained that while he was hospitalized, he was both under the influence of a powerful opioid that impacted his ability to function and on a breathing machine. (Compl. ¶ 39). Furthermore, upon Plaintiff's release from the hospital, he faced both medical and technological barriers to filing this lawsuit. Plaintiff was physically impaired, with the use of only one hand; still under the influence of OxyContin; and generally still in recovery from a traumatic experience. (*Id.* at ¶¶ 45, 47-48). Plaintiff was also unable to reenter his home until June 10, 2019, and did not have access to his phone or laptop until June 19, 2019. (*Id.* at ¶¶ 48-50). The Complaint makes abundantly clear the reasons why Plaintiff

was unable to file his lawsuit between May 27, 2019, and June 19, 2019. There is also no question that Plaintiff was reasonably diligent once the extraordinary circumstances had abated. *See Zerilli-Edelglass*, 333 F.3d at 80-81 (citation omitted). Indeed, Plaintiff attempted to engage a law firm's services the day after he regained possession of his phone. (*Id.* at ¶ 50). The Court therefore finds that Plaintiff has demonstrated that equitable tolling is warranted under these circumstances.

Defendant's relevant challenges can be summarized as follows: (i) Plaintiff's stabbing, hospitalization, and recovery were not sufficiently severe as to warrant equitable tolling, and (ii) even if the incident were sufficiently severe, it does not excuse Plaintiff's failure to file prior to the stabbing on May 27, 2019. (*See* Def. Br. 4-5). Regarding the first challenge, Defendant argues that Plaintiff must show that his medical condition was "so severe as to impact the plaintiff's function such that they are rendered unable to comprehend or pursue their legal rights." (*Id.* at 4 (quoting *Maack* v. *Wyckoff Heights Med. Ctr.*, No. 15 Civ. 3951 (ER), 2017 WL 4011395, at *5 (S.D.N.Y. Sept. 11, 2017)). In describing the high bar that a plaintiff must meet to earn equitable tolling, the *Maack* court relies on the Second Circuit's decision in *Brown*. *See* 2017 WL 4011395, at *5. However, the *Brown* court merely found that "an evidentiary hearing [was] appropriate to determine to what extent … [the plaintiff's] condition did in fact inhibit his understanding or otherwise impair his ability to comply [with the filing deadline]." 287 F.3d at 60-61. It is not clear to this Court that the Second Circuit's language in *Brown* can

12

support the *Maack* court's high standard, and this Court accordingly will not hold Plaintiff to that standard here. As the Court has already explained, Plaintiff has met his burden for equitable tolling.

Defendant's second challenge also fails. As the Court has already noted, a plaintiff "is not ineligible for equitable tolling simply because he waited until late in the limitations period" to file his complaint. *Valverde*, 224 F.3d at 136. Indeed, a plaintiff is only ineligible if, "prior to the occurrence" of the extraordinary circumstances relied upon, he "ha[d] been so neglectful" in the filing of his complaint "that even in the absence of the extraordinary circumstances, a reasonable person in the [plaintiff's] situation would have been unable to file in the time remaining within the limitations period." *Id.* That is not the case here. Plaintiff has alleged speaking with five separate attorneys, and contacting at least seven others. (*See* Compl. ¶¶ 9-24). This conduct does not evince such an attitude of neglect that the Court should ignore the extraordinary circumstances that caused Plaintiff to miss the filing deadline. Moreover, Plaintiff has alleged that, were it not for the stabbing, he would have proceeded *pro se*. (*Id.* at ¶¶ 35, 37). A reasonable person in Plaintiff's situation would have been able to file a *pro se* complaint between May 27, 2019, and June 4, 2019.

Plaintiff has established that he is entitled to equitable tolling from May 27, 2019, to June 19, 2019. On May 27, 2019, Plaintiff had eight or nine days left in the limitations period — more than enough to account for Plaintiff's delay in filing between June 19, 2019, and June 25, 2019. Accordingly, the

13

Court finds that this action was timely filed. Defendant's motion to dismiss is denied.

## CONCLUSION

For the reasons set forth in this Opinion, Defendant's motion to dismiss is DENIED. The Clerk of Court is directed to terminate the motion at docket entry 18. On or before **April 29, 2020**, Defendant shall file a responsive pleading. On or before **May 13, 2020**, the parties shall submit a proposed Case Management Plan, as well as the joint status letter contemplated by the Plan.

SO ORDERED.

Dated: April 8, 2020
       New York, New York

*Katherine Polk Failla*

KATHERINE POLK FAILLA
United States District Judge